IN THE UNITED STATES DISTRICT COURT
FOR THE __Western__ DISTRICT OF __Kentucky__
__6th__ DIVISION
*(Write the District and Division, if any, of the court in which the complaint is filed.)*

18 JAN 19 AM 11:44

__William Egbert Gibson__
__Judy Arlene Gibson__

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

__Ford Motor Company__
__Xerox HR Solutions, LLC__
__Conduent, Inc.__

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No. __3:18-CV-43-CRS__
*(to be filled in by the Clerk's Office)*

Jury Trial: ☐ Yes ☑ No
*(check one)*

I.  **The Parties to This Complaint**

   A.  **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   Name: William Egbert Gibson
   Street Address: 152 C.E. Smith Rd.
   City and County: Shepherdsville, Bullitt
   State and Zip Code: Kentucky, 40165
   Telephone Number: (502) 649-3131
   E-mail Address:

   (see Plaintiff #2 attachment)

   B.  **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

   Defendant No. 1

   Name: Ford Motor Company
   Job or Title (if known): Plan Administrator, Sole Named Fiduciary
   Street Address: One American Road
   City and County: Dearborn, Wayne
   State and Zip Code: MI 48126
   Telephone Number: 313-322-3000
   E-mail Address (if known):

   Defendant No. 2

   Name: Xerox HR Solutions, LLC
   Job or Title (if known): Service Provider, Co-Fiduciary
   Street Address: 45 Glover Ave.
   City and County: Norwalk, Fairfield

2

I.  **The Parties to This Complaint**

   A.  **The Plaintiff(s)**   _Plaintiff #2 - Continued_

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | Judy Arlene Gibson |
   | Street Address | 152 C E Smith Rd |
   | City and County | Shepherdsville, Bullitt |
   | State and Zip Code | KY  40165 |
   | Telephone Number | (502) 599-6202 |
   | E-mail Address | jjjemily@yahoo.com |

   B.  **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

   Defendant No. 1

   Name
   Job or Title (if known)
   Street Address
   City and County
   State and Zip Code
   Telephone Number
   E-mail Address (if known)

   Defendant No. 2

   Name
   Job or Title (if known)
   Street Address
   City and County

2 (A)

      State and Zip Code   CT. 06850

      Telephone Number   203-968-3000

      E-mail Address
      (if known)

Defendant No. 3

      Name   Conduent

      Job or Title   Service Provider, Co-Fiduciary
      (if known)

      Street Address   100 Campus Dr.

      City and County   Florham Park, Morris

      State and Zip Code   N.J. 07932

      Telephone Number   888-471-2271

      E-mail Address
      (if known)

Defendant No. 4

      Name

      Job or Title
      (if known)

      Street Address

      City and County

      State and Zip Code

      Telephone Number

      E-mail Address
      (if known)

**II.**   **Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

A. **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

_Employee Retirement Income Security Act (ERISA) See attachment: ERISA Codes (2 pages)_

B. **If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

   a. If the plaintiff is an individual

      The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

   b. If the plaintiff is a corporation

      The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual

      The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

4

# ERISA CODES
## EMPLOYEE RETIREMENT INCOME SECURITY ACT

**ERISA 502 29 1132 Civil Enforcement –**

- ERISA 502 (a) (1) (A) (B)
- ERISA 502 (c)(B)
- ERISA 502 (e)(1)
- ERISA 502 (e)(2)

**ERISA 409 29 1109 Liability for Breach**

- ERISA 409(a)

**ERISA 404 29 1104 Fiduciary Duties**

- ERISA 404 (a)(1)(A)(i)(B)(D)

**29 CFR 2550.404 c-1 ERISA section 404 (c) Plans**

- 29 CFR 2550.404 c-1 (b)(2)(i)(A)
- (b)(2)(ii)(B) and (d)(2)(ii)

**ERISA 405 29 1105 Liability for Breach of Co Fiduciary**

- ERISA 405 (a)(1)(2)(3)

**ERISA 503 29 1133 Claim Procedure**

- ERISA 503 (1)
- ERISA 503 (2)

**ERISA 2560.503 -1 – Claims Procedure**

- 29 CFR 2560.503-1 (b)(3)
- 29 CFR 2560 503-1 (f)(1)
- 29 CFR 2560.503-1 (g)(1)(i)
- 29 CFR 2560.503-1 (g)(1)(ii)

# ERISA CODES
## EMPLOYEE RETIREMENT INCOME SECURITY ACT

- 29 CFR 2560.503-1 (g)(1)(iii)
- 29 CFR 2560.503-1 (h)(2)
- 29 CFR 2560 503-1 (h)(2)(ii)
- 29 CFR 2560 503-1 (h)(2)(iii)
- 29 CFR 2560 503-1 (h)(2)(iv)
- 29 CFR 2560.503-1 (m)(8)

**28 U.S. Code Section 1131 – Federal Questions**

      b.    If the defendant is a corporation

          The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____. Or is incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

   3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

_____

_____

_____

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See attachment titled: STATEMENT OF CLAIM ~~(3 pages)~~ NEW (4 Pages)

_____

_____

5

# Statement of Claim

Defendant (1),

Ford Motor Company (FMC) is the Plan Administrator and sole Named Fiduciary of the Tax-Efficient Savings Plan for Hourly Employees (TESPHE, The Plan)

Defendant (2),

Xerox HR Solutions, LLC was a service provider, controlling account transfers and other such duties. Provided services thru the National Employees Service Center (NESC) Defined as a Fiduciary under the Employee Retirement Income Security Act (ERISA). Employees are provided the services using computers at the place of employment.

Defendant (3)

Conduent replaced Defendant (2) as a service provider sometime during the Claim and Appeal process (to be discovered).
Provided services thru the National Employees Service Center (NESC) Defined as a Fiduciary under the Employee Retirement Income Security Act (ERISA). Employees are provided the services using computers at the place of employment.

Plaintiff (1)

Plaintiff 1 is and has been as of the year 1995 a participant of the Tax-Efficient Savings Plan for Hourly Employees (TESPHE, The Plan). Plaintiff (1) is and has been as of January 29, 1990 an employee of Defendant #1. Employed at Louisville Assembly Plant, located at 2000 Fern Valley Road, Louisville, KY 40213, Jefferson County.

Plaintiff (2)

Is the wife of Plaintiff (1) and a named beneficiary of Plaintiff (1)'s accounts. Plaintiff (2) has been present during phone conservations and witnessed via speaker phone the conservations. Plaintiff (2) has prepared all the documents submitted in the Claim and Appeal processes.

Under the Employee Retirement Income Security Act (ERISA) Section 502- 29 U.S. Code 1132 – Civil Enforcement, participants and beneficiaries are entitled to bring a Civil Action for Breach of Fiduciary Duty and seek equitable relief and other appropriate relief.

All Claim and Appeal processes between the Defendants and Plaintiffs have been exhausted. Plaintiffs brings Civil Action for Breach of Fiduciary Duty under ERISA and applicable United States Code.

On January 4, 2016, Plaintiff (1) elected two transactions on the Plaintiff's TESPHE accounts.

The first transaction was to move 100% (one hundred) from the Interest Income Fund (IIF) to the Ford Stock Fund (FSF). This transaction was accepted and given a confirmation number of "16004093032" by the National Employee Service Center (NESC). After reviewing this action, Plaintiff (1) concluded that Plaintiff (1) had entered the information incorrectly, Plaintiff (1) deleted the above transaction.

## Statement of Claim

After deleting the above transaction, Plaintiff (1) then entered the second transaction to move a 100% (one hundred) from the (FSF) to the (IIF), this transaction was accepted and given a confirmation number of "16004093033".

Sometime after the processing of the transactions Plaintiff (1) checked the status of the **Entries** (emphasis added), the status was given by the NESC as "Completed". The Plaintiffs have requested (Citing ERISA) all the phone and other contact records generated with the NESC. The Plaintiffs have been denied these generated records. **To Be Discovere**d.

On January 12, 2016, Plaintiff (1) reviewed the **Balances** (emphasis added), of accounts on line. Plaintiff (1) found that there was a balance in both the FSF and IIF accounts. This indicates a problem with the Plaintiffs accounts, as with 100% transfers between two accounts only one should have a balance and the other should be a zero balance.

It is the Plaintiffs position that on January 5, 2016, all of Plaintiffs investment should have been in the IIF and a zero balance in the FSF.

On January 12, 2016, the Plaintiffs called the NESC, phone number 1-800-248-4444 around 4:15pm EST, about a loss in the Plaintiffs accounts and to The Plan in general of $5847.00 (fifty-eight hundred and forty-seven dollars). The Plaintiffs spoke to a person named Shawn, the Plaintiffs informed her of the dispute. Shawn informed the Plaintiffs that the NESC would investigate the accounts and get back to the Plaintiffs within 48 hours. The Plaintiffs informed Shawn that the accounts needed to reflect the last transaction (FSF to IIF). NO action was taken by the NESC, (such as freezing or holding the Plaintiffs accounts) to prevent greater losses to the Plaintiffs accounts and to The Plan in general.

On January 13, 2016, Plaintiffs again called the NESC, the Plaintiffs asked for a Supervisor. The Plaintiffs were directed to Denise Sroka. The Plaintiffs informed Denise Sroka that FSF had a large drop and the Plaintiffs had a loss of approximately $4381.00 (forty-three hundred and eighty-one dollars) a combined total loss of approximately $10,228.00 (ten thousand two hundred and twenty-eight dollars) to the Plaintiffs account and to the Plan in general. **To Be Discovered for Accuracy.**

Plaintiffs were reconnected to Shawn and performed a Reallocation transaction confirmation #16013143815 resulting in all the Plaintiff's money being applied to the IIF account.

The final loss to the Plaintiff's account and The Plan in general before the Reallocation may have been prevented if the Plaintiffs accounts were corrected, frozen or held on notice of dispute.

As the NESC did not call the Plaintiffs after the 48 hours required to investigate the dispute (described on January 12, 2016), the Plaintiffs called about the investigation on January 15, 2016 and spoke to a person named Dorothy. Dorothy informed Plaintiff that there was a call back scheduled on January 19, 2016, regarding the Plaintiff's call of January 12, 2016.

On January 21, 2016, Plaintiffs had not received the scheduled call from the NESC. The Plaintiffs called the NESC and spoke to a person named Sherry, she informed the Plaintiffs that "both transactions did not process because the Plaintiff did not delete one". Plaintiff ask to speak to Supervisor Denise Sroka about the appeal process and Ms. Sroka stated that transaction cancel each other out.

On February 13, 2016, Plaintiffs personal information was circulated by Defendant #2, via an email generated by James Dalcourt. The email contained the Plaintiffs complete Social Security Number and

## Statement of Claim

Name on the same email. The Plaintiffs account number is also the Plaintiffs Social Security Number. The Defendant #2 has risked the Plaintiffs financial security by circulating the Plaintiffs personal information.

Correspondence from Defendant #1 dated December 9, 2016, (response to Plaintiffs Appeal) states "As your fund transfer requests were processed in accordance with the Plan's standard fund transfer procedures, your appeal has been denied".

On January 2, 2017, the Plaintiffs requested "what are the plans Standard Fund Transfer procedures?"

On February 16, 2017, Defendant #1 responds to Plaintiffs stating "that provision does not specifically describe the mechanics for processing investment transfer elections and there fore was not referenced in the denial of the appeal".

Defendants #1 response of February 16, 2017 also contained a provision from the "Benefit Plans and Agreements" between the UAW and Ford Motor Company, Volume III (the Agreement). The title of the provision is: "VIII. Transfer of Assets to Other Investment Elections". The provision states: any member may elect, at such times, in such manner, to such extent and with respect to such assets as the Committee from time to time may determine, to have the value of all or part of the assets invested in any investment election under the Plan in such Member's Account transferred by being invested in such account in such other of the ways in which Contributions may be invested pursuant to this Paragraph VIII as the Member shall elect; provided however, that:

(a) A Member may make one or more such transfer elections each business day.

(b) A Member may make such transfer elections in either a dollar amount or a percentage of the amount invested in such investment option from which such transfer is elected, in increments of one percent.

(c) All such transfer elections shall be subject to such other regulations as the Committee or specific fund manager may prescribe, which may specify, among other things, application procedures, minimum and maximum amounts that may be transferred, procedures for determining the value of assets, the subject of a transfer election and other matters which may include conditions or restrictions applicable to transfer elections.

Furthermore, correspondence dated August 28, 2017, from Defendant #1 "this letter is in response to your letter dated July 28, 2017" (Plaintiffs request for a copy of the Standard Fund Transfer Procedures).

(1) You requested a "copy of the Standard Fund Transfer Procedures governing the operation of TESPHE." Elections to transfer funds between the various investment options offered under TESPHE are processed automatically by Conduent Inc. ("Conduent"). Conduent's computer systems process these elections electronically. Therefore, Conduent does not have a procedure document related to fund transfer elections, as these elections are processed electronically and not manually. **Consequently, no transfer procedures document exists to be provided**. Emphasis added. (The Standard Fund Transfer Procedure was used as the reason for the denial of the Appeal).

## Statement of Claim

Claims of Breach of Fiduciary Duty by the 3 Defendants: (The Fiduciaries are responsible for each other's actions)

Claim 1: Failed in obligation to follow investment instructions: The Plaintiffs account as well as The Plan in general suffered a loss due to not processing the transactions as instructed.

Claim 2: Misrepresented the "status" of the transactions on the NESC web sight as "completed" as 100% transfers when the factual investigation (emails) show that the instructions were not followed.

Claim 3: NESC fail to act diligently to prevent additional losses to the Plaintiffs account and The Plan in general upon notice of the dispute.

Claim 4: The Plaintiffs relied on the information supplied by the NESC to file a Claim of loss on February 4th, 2016, as well as an Appeal on July 1, 2016, of the denial of the Claim of loss. The Plaintiffs were mislead to believe that the information was the result of an investigation.

Claim 5: Concealment: The result of a factual investigation was concealed from the Plaintiffs until June 2, **2017** (emphasis added). Three emails were included in an informational packet from TESPHE Board of Appeals. The emails stated that "You don't show the entire transfer amount on the transfer line because **WE DIDN'T NEED TO "SELL" ALL OF THE UNITS** (emphasis added) to reflect the end closing position needed." The Plaintiffs instructed 100% transfers which would be to sell all the units. Please see attachment Re: Ford Fund Transfer Explanation (**emails attached**). (emphasis added)

Claim 6: The Plaintiffs were not given a full and fair review of Plaintiffs Claim and Appeal, as the information supplied by the NESC was misleading as to the factual investigation represented by the concealed emails.

Claim 7: Arbitrary and Capricious, Concealment and Loyalty: The Plaintiffs received on June 2, **2017** (emphasis added), a copy of a Letter titled: Appeal Determination from Xerox to TESPHE Board of Appeals. Stated in this letter: "Defendant #2 admits the date on [Claim Determination] letter was only an unfortunate typing error, but the stamped envelope verifies the actual mail date. OGC [our general council] advised that exceeding the 90-day limit does not mean that the claim determination must be reversed. Going over the limit simply allows the claimant the right to pursue further ligation".

Claim 8: Date Manipulation and Fraud:   A Claim Determination letter was written on **APRIL** 14, 2016 (emphasis added). A request for an extension of time to "review the relevant information" to make a determination was made on **May** 9, 2016 (emphasis added). The determination was already written before the request. The Determination letter was postal marked June **10**, 2016 (emphasis added). The postal date of record at the NESC is June **13**, 2016. (emphasis added)

Claim 9: Failure to Monitor Co-Fiduciaries: The soled name Fiduciary for The Plan, Defendant #1 has failed to monitor the actions of the Co-Fiduciaries Defendant #2 and Defendant #3. Defendant #1 has knowledge of breaches of Fiduciary duty by Defendant #2 and Defendant #3 and has made no attempt to rectify the breaches committed by Defendant #2 and Defendant #3. Defendant #1 was presented evidence of breach of Fiduciary Duty by Defendant #2 and Defendant #3 by notice from the Plaintiffs on November 16, **2017**. (emphasis added)

Claim 10: Failure to Disclose: The Plaintiffs have made several requests of relevant documents and information generated during the Claim and Appeal process. These requests have gone unanswered.

# RE: Ford - Fund Transfers Explanation

**Jackson, Kathleen**
Sent: Friday, April 08, 2016 4:36 PM
To: Bhardwaj, Vivek; MHRS Systems RKS Help
Cc: DL-DC Ford Admin; GLO DC FRD

In Red



**From:** Bhardwaj, Vivek
**Sent:** Friday, April 08, 2016 4:17 PM
**To:** Jackson, Kathleen; MHRS Systems RKS Help
**Cc:** DL-DC Ford Admin; GLO DC FRD
**Subject:** RE: Ford - Fund Transfers Explanation

Hi,

Thank you for your response.

Based on the below explanation I have few more question which are:-

(1) Why was the balance in fund 12 was not 0 after completion of the second transfer transactions. Because each election was processed against the beginning account balance in that fund before any activity (in the screen shot below, it is the opening plus interest in each fund). 100% of that amount moved from 12 to 22 and 100% of that amount moved from 22 to 12. Essentially, in this case, swapping the ending balances. The transfers are not processed in some random sequential order.
(2) Why was the transfer transaction from Ford stock to Interest Income fund was allowed without deleting the previous transaction. Multiple From/To elections are allowed in any election window. The expectation is that the participant would not enter conflicting elections. But we cant prevent it because there is nothing wrong with someone electing 100% from Fund 1 to 2, AND 100% from fund 3 to 4, AND 100% from fund 5 to 1, etc. Nor is it a problem with someone electing 50% from fund 1 to 2 AND 50% from fund 1 to 3 AND 100% from fund 4 to 1, etc
(3) Why was the second transfer allowed when the plan SPD states:-

*The investment options in the TESPHE may impose limits on how frequently you may transfer into the investment option. For example, a fund may not allow you to transfer back into the fund if you transfer out of the fund within the previous 60 days.* Because the transfer did not yet occur at the time of election, and the amount that actually transferred was only the NET amount of the two amounts since they happened on the same day as noted in the last sentence of my last response. Going forward, this person would only be restricted in fund 22 because that is the only fund with a net purchase as a result of this transfer. Fund12 shows a net sale and so would not create a future restriction

Thanks,
Vivek

**From:** Jackson, Kathleen
**Sent:** Friday, April 08, 2016 9:11 PM
**To:** Bhardwaj, Vivek; MHRS Systems RKS Help
**Cc:** DL-DC Ford Admin; GLO DC FRD
**Subject:** RE: Ford - Fund Transfers Explanation

7/22/2016                                        RE: Ford - Fund Transfers Explanation

I am looking at the sweep file
WW.W.XACT.D160104.UPDTDDS.FRD20702.ARSWP

And I see two active transactions for him but <u>no deleted transactions.</u> I can't say why there is no deleted transaction. Maybe the participant hit the wrong button and never deleted it. But it wasn't recorded for sure. Whether the client wants to believe him in lieu of any proof is not mine to say

SS# ▮▮▮▮▮ 02  2016/01/04  09:30:32  0008775  A DFT <- this one indicating 100% transfer from fund 22 to fund 12
SS# ▮▮▮▮▮ 02  2016/01/04  09:30:33  0008775  A DFT <- this one indicating 100% transfer from fund 12 to fund 22

The first transaction elected, 22 to 12, moved everything he had from 22 to 12, so 94,995,41
01/04/2016   Opening Balance          794.98521    94,991.03
             Fund Transfer            652.41875-   77,959.67-
             Gain/Loss                  0.00000         4.38
01/04/2016   Closing Balance          142.56646    17,035.74

The second transaction elected, 12 to 22, then moved everything he had from 12 to 22, so 17,035.74
01/04/2016   Opening Balance        3,397.29688    17,179.46
             Fund Transfer         15,546.85434    77,959.67
             Gain/Loss                  0.00000       143.72-
01/04/2016   Closing Balance       18,944.15122    94,995.41

You can see that the amounts transferred are the closing balances of each fund on that date. You don't show the entire transfer amount on the transfer line because we didn't need to 'sell' all of the units to reflect the end closing position needed. Only the net amount of each was sold/bought – just as would be necessary for trading purposes

---

**From:** Bhardwaj, Vivek
**Sent:** Friday, April 08, 2016 11:13 AM
**To:** MHRS Systems RKS Help
**Cc:** DL-DC Ford Admin; GLO DC FRD
**Subject:** Ford - Fund Transfers Explanation

Hi,

**Problem Description:**

For participant William E Gibson (▮▮▮▮▮ SS#), We are not sure how the transactions processed on January 4, 2016. Participant requested 3 transactions
   (1) 100% transfer from Interest Income to Stock
   (2) Deletion of this transaction.
   (3) 100% transfer from Ford Stock to Interest Income.

**Our questions are:**

   (A) The first transaction was completed but 100% funds were not transferred. The opening balance in Interest Income Fund as of 01/04/2016 was $94,991.03 however, only $77,959.67 was transferred to Ford Stock Fund. Please see below the screen shot and suggest why not the entire balance was transferred?



(B) Why the deletion of the first transaction was not recorded whereas participant says he deleted the first transaction.

Please let us know if you require any more information from us on this.

Thanks,
Vivek

IV. **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attachment titled: RELIEF: PLAINTIFFS ASKS THE COURT TO ORDER: (pages 1)

V. **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 19, 20 18

Signature of Plaintiff: *William E Gibson*
Printed Name of Plaintiff: William E Gibson

B. **For Attorneys**

Date of signing: _____, 20__.

152 C.E. Smith Rd.
Shepherdsville, KY
40165

6

Relief: Plaintiffs asks the court to order:

1. Plaintiffs ask the court to order: The Defendants to restore the Plaintiffs accounts (IIF and FSF) to the balances of record on January 3rd, 2016 (IIF equaling $94,991.03, FSF equaling $17,179.46). The transaction #16004093032 (IIF to FSF) and #16004093033 (FSF to IIF). The transactions are to be processed in order of entry as instructed (100% transfers). The result of the processing is to represent that 100% of the balances of both the accounts are combined and 100% in the IIF account. The resulting balance in the IIF account is to be brought up to present date thru affecting transactions and that a statement for each affecting transaction is produced. The Fiduciaries have denied the Claim and Appeal (as outlined in The Plan) made by the Plaintiffs and have not corrected the combine losses caused by not processing to instruction and not acting diligently to reduce greater losses to the Plaintiffs accounts and to The Plan in general. This order would be equitable (approximately $10,228.00 is the amount of harm to the Plaintiffs and The Plan in general. To be discovered).

2. Plaintiffs asks the court to order: The Defendants **each** (emphasis added) to be penalized to the maximum extent under ERISA 502, 29 U.S. Code 1132. As the Defendants are all Fiduciaries and should have knowledge of the other or committed Fiduciary Breaches and have not acted to correct these breaches. Relevant Informational request have not been addressed to date. The amount of the penalties is set at the courts discretion.

3. Plaintiffs asks the court to order: (under ERISA 409, 29 U.S. Code 1109) the removal of The Plans Named Fiduciaries, Service Provider Co-Fiduciaries and the Board of Appeal as the Board makes decisions in the Claim and Appeal process of The Plan making them a Fiduciary. As the Fiduciary have acted Arbitrary and Capricious, committed Fraud, and Concealment in the Plaintiffs Claim and Appeal and have not acted to correct these violations of ERISA and the U.S. Code. The Fiduciaries are subject to criminal action under the U.S. Codes for their actions in the Claim and Appeal by the Plaintiffs. (Defendants supplied information to the Plaintiffs on which they based their Claim and Appeal. The information has been shown to be false causing the Plaintiff to make false statements in their Claim and Appeal. 42 U. S. Code, Section 1011 – Penalty for Fraud. 42 U.S.C. 1011(a)(1)(2)(5).)

4. Plaintiffs asks the court to order: Any monetary relief that the Plaintiffs are entitled to and have not specifically named in this Compliant to be awarded.