UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

WILLIAM EGBERT GIBSON, ET AL.                                      Plaintiffs

v.                                                    Civil Action No. 3:18-CV-43-RGJ

FORD MOTOR COMPANY, ET AL.                                         Defendants

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

This matter is before the court on the Motion for Partial Summary Judgment [DE 49] filed by Defendant Ford Motor Company ("Ford"), the Motion to Stay Discovery [DE 50] filed by Ford and Defendant Conduent, Inc. ("Conduent"), the Motion for Summary Judgment [DE 54] filed by Conduent, the Dispositive Brief [DE 64] filed by Ford and Conduent, and Motion to Stay Briefing on Dispositive Brief [DE 65] filed by Plaintiffs William Egbert Gibson ("Gibson") and Judy Gibson (collectively the "Gibsons"). The Court held oral argument. [DE 80, Dec. 3, 2019 Trans.]. These matters are ripe. For the reasons below, Ford's Motion for Partial Summary Judgment [DE 49] is **GRANTED** in part, Ford's and Conduent's Motion to Stay Discovery [DE 50] is **DENIED**, and Conduent's Motion for Partial Summary Judgment [DE 54] is **GRANTED** in part. The Court **ADMINISTRATIVELY REMANDS** the Dispositive Brief [DE 64] pending completion of discovery and briefing by the parties, and the Motion to Stay Briefing on Dispositive Brief [DE 65] is **GRANTED.**

### BACKGROUND

Gibson participates in the Ford Tax-Efficient Savings Plan for Hourly Employees ("TESPHE" or "the Plan"). Judy Gibson is beneficiary of this account. [DE 37, ¶ 2]. Ford is the

1

Plan Administrator and Conduent provides third-party administration services under the Summary Plan Description. [DE 45-3 at 47].

This lawsuit arises from two online transactions that Gibson made on January 4, 2016. On that date, Gibson had $112,170.49 in his Plan accounts. There was $94,991.02 in his Interest Income Fund ("IIF"), and $17,179.47 in his Ford Stock Fund ("FSF"). [DE 37, Sec. Am. Coml. ¶ 9]. Gibson intended to move 100% of the funds in the FSF to the IIF. [*Id.* ¶¶ 10-11]. But under the first transaction, he mistakenly moved 100% of the funds in the IIF to the FSF. [*Id.* ¶ 10]. He received a confirmation number for the first transaction. [*Id.*] Realizing this, Gibson tried to delete the first transaction. [*Id.* ¶ 11-12]. After trying to delete the transaction unsuccessfully, Gibson completed a second transaction, moving 100% of the funds from the FSF to the IIF. [*Id.* ¶ 12]. He received a confirmation for the second transaction. [*Id.*]. Gibson checked the status of the transaction on the portal; it stated "Completed." [*Id.* ¶ 14]. Gibson contends this should have caused all of his funds being in the IIF, and no fund in the FSF. [*Id.* ¶ 13]. Several days later, Gibson discovered that there was a balance in both funds. [*Id.* ¶15]. Gibson reached out to Ford many times following the transactions and many communications went back and forth between the parties over the course of a year and a half. Gibson filed a notice of claim, which was denied at first and on administrative appeal.

After exhausting their administrative remedies, the Gibsons sued Ford and Conduent. Count I of the Second Amended Complaint ("Complaint") asserts an ERISA benefit denial claim under 29 U.S.C. § 1132(a)(1)(B) against both Ford and Conduent. Count I alleges the Defendants failed to follow Mr. Gibson's investment directions causing a financial loss as "approximately $10,228.00." [DE 37, ¶¶41-46]. Count I also alleges the Defendants handled the Gibsons' claim and appeal contrary to the terms of the Plan. [*Id.*]. Count II of the Complaint asserts a breach of

fiduciary duty claim under 29 U.S.C. § 1132(a)(3) as well as a statutory penalty claim under 29 U.S.C. § 1132(c)(1)(B) for failure to supply requested information.

Count II of the Complaint has two parts. First, it asserts a breach of fiduciary duty claim under 29 U.S.C § 1132(a)(3), alleging that Ford and Conduent breached their duties by:

1. failing to follow Mr. Gibson's investment instructions,

2. by inaccurately noting the transactions directed by Mr. Gibson to be 'complete,' by failing to act diligently [to] prevent the further reduction in value of Mr. Gibson's and the Plan's assets upon being informed of the incomplete transaction,

3. by disseminating Mr. Gibson's personal confidential information,

4. by failing to decide Plaintiffs' claim in a timely manner as required by law,

. . .

5. by providing Plaintiffs with misleading and incomplete information,

6. by concealing information from Plaintiffs,

7. by failing to adequately support the Denial of Claim with reference to any Plan provision or rule,

8. by failing to comply with Plan terms and provisions,

9. by failing to monitor co-fiduciaries, and

10. by fraudulently backdating and/or failing to timely deliver Claim determinations and correspondence with Plaintiffs.

[DE 37, ¶¶ 49, 52]. The Gibsons allege damages of at least $10,220. [DE 37, ¶ 50]. The Second part of the Gibsons' fiduciary duty claim asserts a statutory penalty claim under 29 U.S.C. § 1132(c) for failing to provide information requested by the Gibsons as required by 1132(c). [DE 37, ¶¶ 49, 53, "by failing to provide Plaintiffs with full information generated or relied upon in making a claim determination as required by law"].

Only Count II is at issue in Ford's motion. Ford argues the first part of the breach of fiduciary duty claim is duplicative of the injury alleged in the breach of contract claim and thus fails as a matter of law. Ford argues the second part of the breach of fiduciary duty claim, statutory penalty, fails as a matter of law. Conduent's motion for summary judgment pertains to both counts. Conduent first argues it is not a "fiduciary" under ERISA and both claims against if fail as a matter of law. Conduent argues the second portion of the fiduciary duty claim, statutory penalty, is inapplicable to Conduent. Conduent also makes the same arguments as Ford on the breach of fiduciary duty claims.

**STANDARD**

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party must show that there are no genuine issues of material fact and that it is legally entitled to judgment. *Provenzano v. LCI Holdings, Inc*., 663 F.3d 806, 811 (6th Cir. 2011) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Then, the nonmoving party must "present sufficient evidence to permit a reasonable jury to find in its favor." *Pierson v. QUAD/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986)).

Factual differences are not material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Anderson,* 477 U.S. at 252. The ultimate question is "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving] plaintiff is entitled to a verdict." *Id*. The Court should view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v.*

*Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). Under Rule 56(c)(1)(a)-(b), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by"

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

## ANALYSIS

Under ERISA, a participant or beneficiary may bring civil suit under § 502(a)(1)(B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A participant or beneficiary may also bring a civil action under § 502(a)(3):

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) **to obtain other appropriate equitable relief** (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added).

Equitable relief under § 1132(a)(3) can include "make whole relief" in some cases. *See, e.g.*, *CIGNA Corp. v. Amara*, 563 U.S. 421, 440–42 (2011) ("make whole relief" potentially available under § 1132(a)(3) based on circumstances resembling fraud). But § 1132(a)(3) functions "as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 513 (1996). As the

Supreme Court explained in *Varity Corp.*, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Id.* at 515 (internal quotation marks omitted). If two separate claims share the same factual basis, they only constitute one injury, and therefore they only deserve one remedy. *Myers v. Anthem Life Ins. Co.*, No. 3:14-CV-00948-JHM, 2015 WL 6394524, at *2 (W.D. Ky. Oct. 22, 2015).

The Sixth Circuit, in *Rochow v. Life Ins. Co. of N. America*, held that a plaintiff has no right to relief under both § 502(a)(1)(B) and § 502(a)(3) "where the § 502(a)(1)(B) remedy is adequate to make the claimant whole." 780 F.3d 364, 371 (6th Cir. 2015). Rather, a plaintiff can only get relief under both sections "where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate." *Id.* at 372. So, the § 1132(a)(3) claim for equitable relief must be more than "a repackaged claim for benefits wrongfully denied." *Id.* at 375. And although "the exact contours under which 'make whole relief' is available is still an evolving area of law, it is clear that when it is available there are unique circumstances beyond just a denial of benefits." *Hackney v. Lincoln Nat. Life Ins. Co.*, No. 3:11-CV-00268-TBR, 2014 WL 3940123, at *5 (W.D. Ky. Aug. 12, 2014). "Equitable relief" in this context has been we held to refer to "those categories of relief that were typically available in equity . . ." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). Money damages are the classic form of legal relief. *Id.* Injunction, mandamus, and restitution are typical of equity relief. *Id.*

   1. **Is the first part of the breach of fiduciary duty claim based on a separate injury from the breach of contract claim?**

Ford and Conduent move for summary judgment on the first part of the Gibsons' breach of fiduciary duty claim brought under § 1132(a)(3). They argue the alleged injury for this claim

6

is not separate from the injury under the breach of contract (denial of benefits) claim, and thus under *Rochow*, fails as a matter of law. The Gibsons argue they suffered three injuries from breaches of fiduciary duty that are separate from the injury they suffered from the breach of contract: (1) that Ford and Conduent failed to protect the Gibsons' assets after being informed by the Gibsons that the transactions did not process as intended [DE 66 at 993], (2) that Ford and Conduent improperly circulated Gibson's social security number [DE 66 at 994], and (3) that Ford and Conduent failed to inform the Gibsons that they could proceed directly to litigation rather than exhaust their administrative remedies [DE 66 at 993-94].

As for the Gibsons' first category of conduct, summary judgment is appropriate in favor of Ford and Conduent. The Gibson argue that Ford and Conduent should have frozen the accounts on January 12, 2016 when Mr. Gibson first called to find out about the January 6 transactions. [DE 66 at 994]. At that time, the Gibsons allege they had only lost about $5,000. [DE 37, ¶ 16]. The Gibsons allege the loss was about $10,000 the next day. [*Id.,* ¶ 18]. The Gibsons allege many missteps by Ford and Conduent in the handling of the situation in the weeks following the January 6 transaction but only one loss – the approximate $10,000 in lost value. This conduct is not a separate injury from the Gibsons' breach of contract claim, as required by *Rochow,* and the Gibsons have cited no authority to the contrary. Ford and Conduent are entitled to summary judgment on the Gibsons' breach of fiduciary duty claim.

Next, the Gibsons argue that Conduent's email containing Gibson's social security number compromised his financial security, requiring him to enroll in a security protection program that costs around $35 per month. [DE 66 at 995]. Conduent asserts that it was contractually obligated to keep this information secure and share it only with employees as needed. [DE 69, Reply at 1035, DE 45-1 at 199]. Conduent asserts that it did not share the information outside Conduent's

employees. The Gibsons argue that they have not been able to sufficiently discover who received the email. [DE 66 at 995, DE 80, Trans. at 1101, 1138]. The Gibsons seek depositions from those individuals involved with the email and documents that would allow the Gibsons to ascertain whether the information was further disseminated and to whom. [DE 80, Trans. at 1101]. This alleged injury is separate from the denial of benefits injury and the Gibsons are entitled to discovery to respond to Conduent's claim that it did not share the email with employees outside Conduent. Thus, summary judgment is denied on the Gibsons' breach of fiduciary duty claim to the extent it depends on the sharing of Gibson's social security number. Further, Ford's and Conduent's motion to stay discovery is denied.

Finally, the Gibsons argue that Ford and Conduent breached their fiduciary duties when they failed inform the Gibsons that they could proceed directly to litigation. The Gibsons' claim of loss was filed on February 4, 2016. The Gibsons assert that Ford and Conduent had to respond within 90 days, which was May 4, 2016. On May 9, 2016, Ford and Conduent requested more time to review information and decide the claim. In June 2016, the Gibsons received a Denial of Claim ("Denial"). The Gibsons argue that at this point, Ford, and Conduent should have informed them that they had a right to sue rather than continuing on with the administrative process because Ford and Conduent missed the 90-day deadline. The Gibsons filed their administrative appeal, arguing the merits and that the missed deadline invalidated the denial. On December 9, 2016, the Gibsons' appeal was denied. The denial of their appeal stated, "[n]o legal action may be brought against the Plan until after the claims and appeals procedures of the Plan have been exhausted," and did not substantively address the merits of the Gibsons' argument that the late response invalidated denial of the claim. [DE 45-1 at 431]. The Gibson's spent 18 months completing the

8

administrative review process before filing the present lawsuit without knowing that such exhaustion may have been unnecessary.

The Gibsons argue that Ford and Conduent, as their fiduciaries, owed them an obligation to fully disclose the basis of the denial, including responding to the Gibson's argument on appeal that Ford and Conduent waived the basis of the denial because of the missed deadline. [DE 80, Trans. at 1101].

An ERISA fiduciary must perform its duties in accordance with the standards in 29 U.S.C. § 1104(a)(1), which provides:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
> (A) for the exclusive purpose of:
> (i)      providing benefits to participants and their beneficiaries; and
> (ii)     defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . .

The Gibsons argue that a fiduciary should have informed the Gibsons of the fiduciary's view that it had "substantially complied" and was contending that the Gibsons still had to exhaust, but that it could be the Gibsons had the right to go straight to court. [DE 80, Trans. at 1101-02]. The Gibsons argue this was particularly true because Ford and Conduent knew the Gibsons' were arguing that the delay substantively invalidated the original denial. [*Id.*]

Ford and Conduent do not dispute that they were at least one day late in sending out the letter requesting an extension. [DE 80, Trans. at 1095]. 29 C.F.R. § 2560.503-1(l) provides is that, if claims procedures are not followed, a claimant "shall be deemed to have exhausted the administrative remedies available under the plan and . . . entitled to pursue any available remedies . . ." The Gibsons cite portions of the Administrative Record for the proposition that Defendants

9

knew the Gibsons could bypass the administrative review process and proceed directly to court because of Ford's and Conduent's failure to timely respond to the Gibsons' claim. [DE 45-1, at 374, 425]. The Gibsons also cite portions of the administrative record which they contend show the Defendants intentionally kept this information from them, and affirmatively misrepresented to the Gibsons that they had to exhaust the administrative process before suing. [*Id.*] As a result the Gibsons expended hundreds of hours in an administrative review process before filing this suit.

Defendants argue they "substantially complied" with ERISA regulations and the claim process in the Summary Plan Description because the claim extension letter was only one day late and the denial letter issued within the 180-day period allowed under an extension. [DE 69 at 1036]. Defendants' thus argue their conduct did not trigger 29 C.F.R. § 2560.503-1(l)'s "deemed exhausted" provision. Defendant cite no authority in their motions in support of their position that "substantial compliance" negates applying the "deemed exhausted" provision, although they do cite caselaw in their Dispositive Brief. But the Court stayed briefing on the Dispositive Brief and it is not ripe. [DE 80, Trans. at 1140].

The first question is whether this type of injury in separate from the injury for the breach of contract (denial of benefit). In other words, the issue is whether the relief available to the Gibsons' under their breach of contract/denial of benefits claim (Count 1) under § 502(a)(1)(B) will also make the Gibsons' whole for needlessly undergoing the administrative process. The Defendants argue that the Gibsons may seek an award of attorney's fees under their denial of benefits claim, which would make the Gibsons' whole for their alleged loss for not suing sooner. [DE 80, Trans. at 1099]. But the Gibsons argue that the breach of contract claim will not make them whole for their lost time, resources, and emotional distress separate from the injury suffered by the Gibsons in connection with the loss of benefits under the Plan. Even if the Gibsons can

recover their attorney's fees from the administrative process as part of the breach of contract claim, [DE 80, Trans. at 1099], that would not make the Gibsons whole for emotional toll and burden of an administrative process that was unnecessary.

The factual basis of this third aspect of the Gibsons' claim differs from the factual basis for the breach of contract claim. Thus, it is a separate injury and the Supreme Court has recognized the possibility of an equitable remedy, such as surcharge, under ERISA for breaches of fiduciary obligations by plan administrators. *Cigna Corp. v. Amara*, 563 U.S.421, 443 (2011) (award of make-whole relief in the form of surcharge is part of "appropriate equitable relief" for purposes of Section 1132(a)(3)). This means that a surcharge remedy can "extend[ ] to a breach of trust committed by a fiduciary" arising from "any violation of a duty imposed upon that fiduciary." *Cigna Corp.,* 563 U.S. at 442, *Myers*, No. 3:14-CV-00948-JHM, 2015 WL 6394524, at *2 (W.D. Ky. Oct. 22, 2015). The United States Supreme Court held in *Cigna*, "[a] ERISA fiduciary can be surcharged or ordered to pay money damages under the ERISA provision allowing a participant or beneficiary of ERISA plan to obtain 'other appropriate equitable relief' only upon a showing of actual harm proved by a preponderance of the evidence." *Cigna*, 563 U.S. at 444.

Defendants argue that even if the "deemed exhausted" provision applied, they had no obligation under ERISA to inform the Gibsons that their claim was "deemed exhausted" and that they could proceed to litigation. [DE 69 at 1037]. Defendants argue the lack of an express requirement in the ERISA regulations means they had no duty to inform the Gibsons of this right, but otherwise cite no authority in their motions in support of this argument position.

The Court will not address the merits of this claim on whether "substantial compliance" occurred and required exhaustion. That is more appropriately addressed in the Dispositive Brief

11

filed by Ford and Conduent, which the Gibsons have not yet responded and the Court has permitted an extension to respond. [DE 80, Trans. at 1140].

**2. Conduent's status as a fiduciary under ERISA.**

Conduent moves for summary judgment on both of the Gibsons' claims. Conduent argues that is it not a "fiduciary" under ERISA and thus cannot be subject to either ERISA claim. "Plaintiffs seeking more than the 'appropriate equitable relief' under § 1132(a)(3) . . . must demonstrate that the person violating a duty imposed by ERISA is a fiduciary." *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006). ERISA defines the term "fiduciary" in 29 U.S.C. § 1002(21)(A), which reads, in relevant part:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

"The threshold question in all cases charging breach of ERISA fiduciary duty is whether the defendant was 'acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 552 (6th Cir. 2012). A fiduciary includes anyone who "exercises any discretionary authority or discretionary control respecting management of [the] plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). "[T]he definition of a fiduciary under ERISA is a functional one, is intended to be broader than the common law definition, and does not turn on formal designations such as who is the trustee." *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999). Because an ERISA fiduciary "may wear different hats," a party may act as a fiduciary on some matters but not others. *See Pegram v. Hefrich*, 530 U.S. 211, 225 (2000).

12

Determining ERISA fiduciary status is a functional exercise, with the task being to determine whether there was discretionary authority over plan management, or any authority or control over plan assets. *Brisco*, 444 F.3d at 488; *Hamilton v. Carell,* 243 F.3d 992, 998 (6th Cir. 2001) (explaining "the need to examine the conduct at issue when determining whether an individual is an ERISA fiduciary").

Conduent's electronic computer systems process participant elections to transfer funds between various investment options under the Plan. [DE 45-1, at 208, Aug. 28, 2017 Ltr.]. There appears to be no dispute that Conduent designed the on-line portal used to make investment elections. [DE 80, Trans. at 1105–06, 1109–12, 1117]. Although the Plan documents state that transactions process at 4 o'clock each day [DE 80 at 1119], it also appears that the Plan documents do not address the order or sequence in which transactions process [DE 80 at 1118, 1120]. The Gibsons argue that Conduent had some discretion in taking the Plan documents and designing the on-line portal used to make investment elections. [DE 80, Trans. at 1117]. The Gibsons point out that this circumstance has now been remedied on the online portal. [DE 80, Trans. at 1111–12]. Conduent argues this is not enough because these acts were "ministerial" and not "discretionary" because the computer processes transactions "automatically," and nobody at Conduent was deciding in what sequence the transactions would process. [DE 80, Trans. at 1116]. But as the Sixth Circuit noted in *Brisco*, the second part of 29 U.S.C. § 1002(21)(A)(i) intentionally omitted the word "discretionary" and that lowers the threshold for acquiring fiduciary responsibilities under that section:

> (i) a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan *or exercises any authority or control respecting management or disposition of its assets . . .*

(emphasis added).

To the extent Conduent unilaterally designed the platform in a way that determined the order of the transactions, it is exerting control respecting the management or disposition of the Plan assets rendering it a fiduciary. Conduent states in its Reply that "it is well settled that a party is not a fiduciary if another entity 'retain[s] the final authority to determine whether a claim should be paid.'" [DE 69 at 1031] citing *Briscoe*, 444 F.3d at 488-89. This statement is inaccurate. Whether a person has final authority to determine whether a claim is paid is a factor in some cases but not always dispositive of the fiduciary issue. *Brisco*, 444 F.3d at 489. As a result, Conduent's motion for summary judgment on its fiduciary status under ERISA is denied.

3. **Statutory Penalty Claim.**

Ford and Conduent both move for summary judgment on the Gibsons' statutory penalty claim. First, only the Plan Administrator, which is Ford, can liable for a civil penalty under 29 U.S.C. § 1132(c). 29 U.S.C § 1002(16)(A)(i)[1]; [DE 45-2, Plan Doc.], [DE 45-3 Sum. Plan. Desc.], *Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002). The Gibsons do not dispute that only Ford, as the Plan Administrator can be liable for statutory penalty. [DE 80 at 1124-25]. Conduent's motion for summary judgment on the statutory penalty portion of the Gibsons' breach of fiduciary duty claim is thus granted.

Ford argues that it cannot be liable for statutory penalty. 29 U.S.C. § 1132(c) provides in relevant part:

---

[1] ERISA defines a plan administrator as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A).

14

> Any administrator … who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B). 29 U.S.C. § 1024(b)(4) limits the "information which such administrator is required by this subchapter to furnish" to the following: "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or *other instruments* under which the plan is established or operated." 29 U.S.C.A. § 1024 (West) (emphasis added). The term "other instruments" is "limited to those class of documents which provide a plan participant with information concerning how the plan is operated." *Allinder v. Inter-City Prods. Corp.*, 152 F.3d 544, 549 (6th Cir. 1992). Further, Section 1024(b)(4) "does not mandate disclosure of all documents that might be useful to a plan participant." *Hollowell v. Cincinnati Ventilating Co.*, 711 F. Supp. 2d 751, 761 (E.D. Ky. 2010). Instead, Section 1024(b)(4) has a more limited purpose of insuring that plan participants can obtain "'financial information about the plan'" and "'information about the benefits they are eligible to receive.'" *Allinder,* 152 F.3d at 549 (quoting *Arsenault v. Bell*, 724 F. Supp. 1064, 1066 (D. Mass. 1989)).

The Gibsons made various requests for information beginning in February 2016 [DE 45-1 at 27-30], after realizing the transactions did not process as expected, and through the administrative process. The statutory penalty claim is not based on Ford's failure to provide any particular document. It is based the fact that the Plan documents, under which Ford said it processed the transaction properly, did not explain why the transactions were not sequential. A

year and a half after the transactions, Ford told the Gibsons that no document explains why the order of the transactions did not process sequentially. [DE 80, at 1126-30]. The August 28, 2017 letter from Ford stated:

> 1. You requested a "copy of the Standard Fund Transfer Procedures governing the operation of TESPHE." Elections to transfer funds between the various investment options offered under TESPHE are processed automatically by Conduent Inc. ("Conduent"). Conduent's computer systems process these elections electronically. Therefore, Conduent does not have a procedure document related to fund transfer elections, as these elections are processed electronically and not manually. Consequently, no transfer procedure document exists to be provided.

[DE 45-1 at 208]. Ford argues that they sent all the plan documents requested by the Gibsons, which is what § 1132(c) is designed for and that there was increasing clarity as time went on as Ford responded to the Gibsons' requests for information. [DE 80, Trans at 1133].

The real issue is whether Ford can be liable for a statutory penalty for failing to inform the Gibsons that a document did not exist. Misleading communications to plan participants will support an ERISA breach of fiduciary duty claim, *McGrath v. Lockheed Martin Corp.*, 48 F. App'x 543, 555 (6th Cir. 2002),[2] but the Court has not found authority for this conduct supporting a statutory penalty claim under § 1132(c). Indeed, the Gibsons have alleged that Ford and Conduent breached their fiduciary duties by "failing to provide Plaintiffs with full information generated or relied upon in making a claim determination as required by law, by providing Plaintiffs with misleading and incomplete information, by concealing information from Plaintiffs, by failing to adequately support the Denial of Claim with reference to any Plan provision or rule." [DE 37, §

---

[2] "ERISA fiduciary duty provisions incorporate the common law of trusts, and the 'duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'" *McGrath,* 48 F. App'x at 555.

49]. These allegations, if proven, could show an actionable breach of fiduciary duty. But the Court "cannot award civil penalties . . . stemming from Defendants' failure to produce a document that does not exist." *Colin v. Marconi Commerce Sys. Emp. Ret. Plan*, 335 F. Supp. 2d 590, 613 (M.D.N.C. 2004). *See also Kanoski v. Sterling Paper Co.*, 2014 WL 1384159, *5 (S.D. Ohio Apr. 9, 2014); *Ward v. Maloney*, 386 F. Supp. 2d 607, 613 (M.D.N.C. 2005), aff'd, 171 Fed. App'x 986 (4th Cir. Mar. 22, 2006). Summary judgment is granted to Ford on the statutory penalty portion of the Gibsons' breach of fiduciary duty claim.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED AS FOLLOWS**:

(1) The Motion for Partial Summary Judgment [DE 49] filed by Ford is **GRANTED in part** consistent with this order;

(2) The Motion to Stay Discovery [DE 50] filed by Ford and Conduent is **DENIED** and discovery shall move forward consistent with the rulings in this order;

(3) The Motion for Summary Judgment [DE 54] filed by Conduent is **GRANTED in part** consistent with this order;

(4) The Dispositive Brief [DE 64] filed by Ford and Conduent is **ADMINISTRATIVELY REMANDED** from the Court's docket;

(5) The parties shall confer and submit a revised agreed scheduling order seeking mutually acceptable deadlines for the completion of discovery and filing of dispositive motions within 30 days of the entry of this Order;

(6) Defendants may file a new Motion for Summary Judgment or have its previously administratively remanded Dispositive Brief [DE 64] reinstated on the Court's docket, after discovery is complete;

(7) If Defendants wish to have the administratively remanded Dispositive Brief [DE 64] reinstated on the Court's docket, they shall notify the Court at the appropriate time;

(8) As the Court ruled during the December 3, 2019 hearing [DE 80, Trans. at 1140], the Motion to Stay Briefing on Dispositive Brief [DE 65] filed by Plaintiffs is **GRANTED**.